IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KRISELL FEDRIZZI,  :

    Plaintiff,

v.  :  Case No. 3:20-cv-456

PROVIDENCE MEDICAL GROUP,  :  JUDGE WALTER H. RICE
INC., et al.,

    Defendants.  :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART
DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
(DOC.#6)

---

This case is before the Court pursuant to Defendants' Motion to Compel Arbitration and Stay Proceedings ("Motion"). Doc. #6. Plaintiff has filed a memorandum in opposition, Doc. #7, and Defendants have filed a reply. Doc #8. For the reasons set forth below, the motion is sustained in part and overruled in part.

**I.**    **Background**

According to Plaintiff's Complaint, Kristell Fedrizzi ("Dr. Fedrizzi") is a doctor who successfully practiced medicine in Germantown, Ohio, for nearly 20 years. Doc. #1, PageID#5. She is also a former employee and shareholder of a physician run medical group, Defendant Providence Medical Group, Inc. ("PMG"

or "medical group"). *Id.* Her quality measures and patient satisfaction were among PMG's highest. *Id.*, PageID#6.

PMG consists of 25 doctors and, since its inception, has had fewer than five female doctors, including Dr. Fedrizzi. *Id.*, PageID##5 and 6. In the last two years of Dr. Fedrizzi's practice, the number decreased to three female doctors. *Id.*, PageID#6. PMG is operated by an eight-member board of directors. *Id.* Seven of the eight members on the board are male. *Id.* Two of the board members, Defendant Noel Watson ("Watson") and Defendant Lawrence Ratcliff ("Ratcliff"), were in direct competition with Dr. Fedrizzi, since they operated medical offices no more than ten minutes away from her Germantown office. *Id.*

As alleged in the Complaint, PMG, its Chief Operating Officer ("COO"), Defendant Susan Becker ("Becker"), and the eight board members singled out Dr. Fedrizzi and took adverse employment actions against her. *Id.* Specifically, she was disciplined by Defendants for failing to use the electronic medical records system ("EMR"). Although Dr. Fedrizzi reported to Becker that Watson also failed to use the EMR, no action was taken against him. *Id.* Following her report about Watson, Becker furthered the discrimination and disparate treatment against Dr. Fedrizzi. *Id.*, PageID#7. Adverse employment actions were also taken against her for "unprofessional behavior" because she was allegedly "'moody' and even for 'sigh[ing] loudly' when frustrated." *Id.* Although male PMG doctors, including board members, engaged in "unprofessional behavior" that included sexual misconduct, alcohol abuse and prescription drug abuse, they did not suffer

2

adverse employment consequences or termination. Specifically, Ratcliff had his medical license suspended for prescription drug abuse, yet was not terminated from PMG and, instead, was named its medical director with oversight of the medical group's response to Dr. Fedrizzi's alleged "unprofessional behavior." *Id.*, PageID#7.

Defendants prevented Dr. Fedrizzi from operating her practice by locking her out of her office, taking away her staff, preventing her from seeing her own patients and assigning them to other PMG doctors. *Id.* On May 2, 2019, Defendants terminated her employment. *Id.*

As a result of the adverse employment actions, Dr. Fedrizzi suffered economic losses, embarrassment, humiliation and emotional distress. She filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), under EEOC Charge No. 473-2020-00504, alleging discrimination based on gender. *Id.*, PageID#3. On August 11, 2020, she received from the EEOC a Dismissal and Notice of Rights letter. Suit was filed on November 7, 2020, alleging sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. and under § 4112.99 of the Ohio Revised Code. *Id.* Named as Defendants in her Complaint are PMG, Becker and the eight board members: Watson, Ratcliff, Joni Koren ("Koren"), Robert Myers ("Myers"), Kevin Carter ("Carter"), James Fisco ("Fisco"), Darin Green ("Green") and Paul Opsahl ("Opsahl"). Also named as Defendants are John and Jane Doe(s) 1-10. These

Defendants are identified as PMG members or individuals associated with it who also participated in the adverse employment action taken against Dr. Fedrizzi.

## II. Legal Analysis

### A. Motion to Compel Arbitration

Defendants argue that the PMG Physician Employment Agreement ("Agreement"), signed by PMG and Dr. Fedrizzi on May 23, 2002,[1] contains a "broad arbitration clause" mandating arbitration of her federal and state sex discrimination claims. Doc. #6-1. The relevant language from Article IX of the Agreement, entitled "Mediation and Arbitration," reads as follows:

> The Medical Group and Physician shall in good faith first attempt to resolve <u>any controversy, dispute or disagreement arising out of or relating to this Agreement</u> by face-to-face negotiations by the President of the Medical Group and Physician. Except for controversies, disputes or disagreements involving the provisions of Article VIII[2] of this Agreement, <u>if any such controversy, dispute or disagreement is not resolved within thirty (30) days after such negotiations begin, that controversy, dispute or disagreement shall be submitted to binding arbitration to be held in Dayton, Ohio under the Rules of the American Health Lawyers Association, as modified by the following paragraph and Chapter 2711 of the Ohio Revised Code.</u>

---

[1] The Agreement, effective October 1, 2002, renewed automatically on an annual basis unless it was terminated sooner as provided in the Agreement.

[2] Article VIII, "Additional Covenants," permits PMG to withhold monetary payments and/or seek injunctive relief against a former employee/physician for breaches relating to (1) confidential information and/or (2) contacting the medical group's employees or independent contractors, prior to one year of the former employee/physician's leaving, to solicit, hire or encourage them to leave PMG. Doc. #6-1, PageID##41-42.

4

(emphasis added) ("Arbitration Clause"). Doc. #6-1, PageID#42. Defendants contend that based on the Arbitration Clause, arbitration is required pursuant to the Ohio Arbitration Act ("OAA"), Ohio Revised Code § 2711.01 et seq., and that a stay of litigation is required.

In ruling on Defendants' Motion to Compel Arbitration and Stay Proceedings, the Court, which has jurisdiction pursuant to 28 U.S.C. § 1331, first examines the arbitration language "to give effect to the intent of the parties" as it is "reflected in the language used [by them] in the agreement." *Martin Marietta Magnesia Specialties, L.L.C. v. PUC of Ohio*, 129 Ohio St.3d 485, 2011-Ohio-4189, 954 N.E.2d 104, ¶ 22, citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. Defendants argue, as does Dr. Fedrizzi, that Defendants' Motion is not governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., but by the OAA. Although "the FAA generally preempts inconsistent state laws and governs all aspects of arbitrations concerning 'transaction[s] involving commerce,'" where the parties "unambiguously agree" to apply state rules of arbitration that promote the goals of the FAA, state law will apply. *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 748 F.3d 708, 715-16 (6th Cir. 2014) (Michigan rules of arbitration apply where parties unambiguously agreed and "enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA."); *Muskegon Cent. Dispatch 911 v. Tiburon, Inc.*, 462 F. App'x 517, 522–23 (6th Cir. 2012) (citations omitted).

5

Here, the Arbitration Clause states that a "binding arbitration" will be held in Dayton, Ohio, "under the Rules of the American Health Lawyers Association"[3] and "Chapter 2711 of the Ohio Revised Code," the OAA. No reference is made in the Arbitration Clause to the FAA nor is there any indication anywhere in the Agreement "that the parties sought to invoke its provisions." *Savers Prop. & Cas. Ins. Co.*, 748 F.3d at 716. However, the goals of the OAA are consistent with the FAA. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 26, fn. 1. ("The OAA expresses Ohio's strong public policy favoring arbitration, which is consistent with federal law supporting arbitration."); *ABM Farms v. Woods*, 81 Ohio St.3d 498, 1998-Ohio-612, 692 N.E.2d 574 ("Ohio and federal courts encourage arbitration to settle disputes."). Accordingly, the Court will apply the OAA to this Motion.

In this case, the Arbitration Clause states that it encompasses "<u>any</u> controversy, dispute or disagreement <u>arising out of or relating to this Agreement</u>" (emphasis added). Ohio law is clear that such language is the "paradigm of a broad clause." *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St. 3d 185, 188-189, 2006-Ohio-657, 842 N.E. 488 ("An arbitration clause that contains the phrase 'any claim or controversy arising out of or relating to the

---

[3] On January 16, 2020, the American Health Lawyers Association, changed its name to the American Health Law Association (AHLA). The AHLA is a 501(c)(3) educational organization devoted to legal issues in the health care field.
https://www.americanhealthlaw.org/about-ahla

agreement' is considered 'the paradigm of a broad clause.'" citations omitted). The language in the Arbitration Clause is not only without limitation, it is a standalone provision, not confined to any single article in the Agreement. Despite the broad language and location of the Arbitration Clause in the Agreement, Dr. Fedrizzi contends that it is limited by the words "this Agreement." "This Agreement," however, is a "Physician Employment Agreement"[4] and it defines her employment relationship with PMG. The Complaint alleges that Defendants engaged in "unlawful discriminatory actions" and "adverse employment actions" against Dr. Fedrizzi that ultimately resulted in her termination, despite her having "quality measures and patient satisfaction" that "were among PMG's highest." Accordingly, the Court finds that her claim of sex discrimination under federal and state law is "a controversy, dispute or disagreement" "arising out of" and "relating to" her employment relationship with PMG and therefore, within the scope of the Arbitration Clause.

Dr. Fedrizzi next urges that the Court adopt the standard applied in collective bargaining cases and hold that absent a "clear and unmistakable waiver" of her right to file suit, her Title VII claim cannot be arbitrated. The Court rejects this argument since the legal authority cited in support of this argument pertains only to cases where the parties have bargained for this waiver in

---

[4] The word "(Shareholder)" is located on the first page of the Agreement under the caption "Physician Employment Agreement." Dr. Fedrizzi, however, has made no claim concerning her status as a PMG shareholder.

collective bargaining agreements. Additionally, it is well-established under the FAA that employment claims are subject to arbitration. *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 376 (6th Cir. 2005) ("The Sixth Circuit has repeatedly applied the FAA to arbitration agreements formed in the employment setting."); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (affirming the lower court's decision that the ADEA was not intended to preclude arbitration of claims). Given the similarity between the FAA and the OAA in promoting arbitration, a different result under the Ohio law on the merits of Plaintiff's claim is unlikely.

Dr. Fedrizzi's final two arguments are that the Arbitration Clause is (1) unconscionable because it permits PMG to file suit for certain alleged violations, yet requires her to arbitrate and (2) unenforceable because of its cost sharing provision for the arbitration. The Court will analyze each of these arguments separately.

Section § 2711.01(A) of the OAA permits the revocation of an arbitration agreement "upon grounds that exist at law or in equity." For a contract provision to be deemed unconscionable under Ohio law and a contract revoked,[5] it must be both procedurally and substantively unconscionable with the party asserting unconscionability bearing the burden of proving both elements. *Hayes v.*

---

[5] The Arbitration Clause is "a separate entity" and "in effect, a contract within a contract subject to revocation on its own merits." *Taylor Bldg. Corp of Am.*, 117 Ohio St. 3d at 361 (quoting *ABM Farms*, 81 Ohio St. 3d at 501-502.).

8

*Oakridge Home*, 122 Ohio St.3d 63, 67 (Ohio 2009). Dr. Fedrizzi asserts that substantive unconscionability is shown because the Arbitration Clause is one-sided: she is required to arbitrate her claims but PMG, pursuant to Article VIII of the Agreement, can file suit against any former physician/employee who fails to keep certain information confidential and/or who, within one year of leaving, contacts employees to solicit, hire or encourage them to leave the medical group.[6] Defendants assert that substantive unconscionability is irrelevant since it is not at issue given that the Complaint alleges only claims of sex discrimination. The Court, however, need not determine if substantive unconscionability exists, since it finds that Dr. Fedrizzi has not established procedural unconscionability.

"Procedural unconscionability considers the circumstances surrounding the contracting parties' bargaining, such as the parties' age, education, intelligence, business acumen and experience, who drafted the contract, whether alterations in the printed terms were possible, and whether there were alternative sources of supply for the [consideration] in question." *Taylor Bldg. Corp. of Am.*, 117 Ohio St.3d 361-62. Stated another way, procedural unconscionability requires a showing that "the circumstances surrounding the party to the contract were such that no voluntary meeting of the minds was possible." *Jeffrey Mining Prods., L.P. v. Left Fork Mining Co.*, 143 Ohio App.3d 708, 758 N.E.2d 1173 (2001)). Dr. Fedrizzi asserts in her Response that procedural unconscionability exists because she

---

[6] *See* n. 2.

9

"was not at liberty to negotiate the terms," because it was a "form contract" on a "a pre-printed document with her name handwritten on a blank line on the form" and that she could not "reject the contract given the ruinous consequences it would have had upon her practice."

A pre-printed contract, "without more, fails to demonstrate the unconscionability of the arbitration clause." *Taylor Bldg. Corp. of Am. v. Benfield*, 2008-Ohio-938, ¶ 46, 117 Ohio St. 3d 352, 362, 884 N.E.2d 12, 23, 2008 WL 696334 (home builder's arbitration clause was not unconscionable even though pre-printed form used since it was not fine print or hidden and no evidence that homeowners were rushed).  Additionally, Dr. Fedrizzi fails to provide information that she attempted to negotiate but was told the Arbitration Clause was non-negotiable, was unable to consult with counsel or was otherwise forced or rushed into signing. Additionally, the Arbitration Clause was part of an employment contract between a physician and a medical group with no evidence that the parties were of unequal bargaining power. Finally, the Arbitration Clause was in standard, rather than fine, print, and was not hidden. Because Dr. Fedrizzi has not established procedural unconscionability, her claim that the Arbitration Clause was unconscionable fails as a matter of law.

As to the cost-sharing fees in the Arbitration Clause, the Court finds that this specific requirement is unenforceable.[7]  The Arbitration Clause provides that

---

[7] Article X, "Miscellaneous" section D, "Invalid Provision," provides that "[T]he. . . unenforceability of all or any part of any section of the Agreement. . .shall not invalidate

"[T]he costs of arbitration shall be divided equally between the Medical Group and Physician." Doc. #6-1, PageID#42. The Sixth Circuit has held that "provisions in arbitration agreements that limit the remedies available in the arbitral forum, compared to those remedies available in the judicial forum, are also unenforceable." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 653 (6th Cir. 2003). In Title VII cases and in actions in pursuant to § 4112.99 of the Ohio Revised Code, reasonable attorney fees can be awarded to the plaintiff. Accordingly, Dr. Fedrizzi, if successful on her Title VII sex discrimination claim and/or her state law claim under § 4112.99, will not be required to pay the costs of the arbitration.

### B. Motion to Stay Proceedings

Ohio Revised Code § 2711.02(B) provides for a stay of proceedings when an issue is referrable to arbitration. Because the Court has found that the Arbitration Clause, with the exception of the provision of the cost-sharing fees for the arbitration, is enforceable, Defendants' Motion to Compel is sustained. Additionally, the Court sustains Defendants' Motion to Stay Proceedings, Doc. #6, pursuant to Ohio Revised Code § 2711.02(B).

---

the remainder of this Agreement nor the remainder of any paragraph or section or provision of any Article not invalidated, which shall remain in full force and effect." Doc. #6-1, PageID#43.

11

## III. Conclusion

For the reasons set forth above, Defendants' Motion to Compel Arbitration and Stay Proceedings, Doc. #6, is SUSTAINED in part and OVERRULED in part.

As to the Motion to Compel Arbitration, Doc. #6, the Court finds unenforceable the provision in the Arbitration Clause requiring that the costs of the arbitration be divided equally between PMG and Dr. Fedrizzi, and overrules only this specific portion of Defendants' Motion to Compel Arbitration.

Defendants' Motion to Stay, Doc. #6, is SUSTAINED.

Date: August 24, 2021

WALTER H. RICE
UNITED STATES DISTRICT JUDGE